**INTERSTATE COMMERCE COMMISSION v. DUNN.**

**No. 12138.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 5, 1948.

Gregory U. Harmon, Chief Enforcement Atty., Interstate Commerce Commission, of Washington, D. C., Leo H. Pou, Atty. Interstate Commerce Commission, of Atlanta, Ga., and John P. Cowart, U. S. Atty., of Macon, Ga., for appellant.

Jas. W. Arnold, of Athens, Ga., for appellee.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

During 1946 Parker R. Dunn, using five trucks and six drivers, was engaged in intrastate transportation for hire under a certificate of public convenience and necessity issued to him by the Georgia Public Service Commission. He also used the trucks in hauling for hire loads of baled cotton from points in Georgia to points in adjacent States, nineteen such trips appearing. Nothing else was hauled on these trips, nor was any truck used on the same day for other hauling. Dunn was expecting to continue such operations. The Interstate Commerce Commission sought an injunction against his interstate operations unless he obtained from it a certificate of public convenience and necessity or other authority. Dunn claimed his vehicles so used are exempt from this requirement of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 306(a), because of Section 303(b)(6) quoted below. This injunction was denied and the Commission appeals. An injunction was also sought and obtained touching a failure to keep records of the physical examinations of the drivers, and logs of their interstate trips but those matters are not before us. There is no question of fact or discretion, and the sole question is the meaning of Section 303(b) (6).

The material words are these: "(b) Vehicles exempted from operation of law. Nothing in this part, except the provisions of section 304 relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment, shall be construed to

include * * * (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shellfish), or agricultural commodities (not including manufactured products thereof), *if such motor vehicles are not used in carrying any other property, or passengers, for compensation.*"

■ The italicised words are the critical ones because there is no question about the drivers, or about the safety and equipment of the trucks, and it is conceded that baled cotton is an unmanufactured agricultural commodity. The district court held the trucks exempt because "the vehicles used by defendant in carrying baled cotton in interstate commerce are not *at the same time* used in carrying any other property for compensation". Dunn here contends that the full meaning is that the vehicles are not used in carrying *in interstate commerce* other property for compensation. The Commission in its brief says: "We contend that it makes no difference whether the 'other property' is carried 'at the same time' or *at some other time,* or whether it is moving in intrastate or in interstate commerce". Of the three interpretations we have concluded that of the district court is correct.

■ We cannot write into the provision the words "in interstate commerce". We can see that it would be objectionable to allow mixed loads, the truck doing an intrastate business at the same time that it is handling the privileged property interstate. It would be easy thus to abuse the privilege by carrying across the State line unprivileged freight. Moreover the Commission has long announced a contrary view. Such was its first decision called to our attention, Williams Contract Carrier (1937) 2 M.C.C. 685, adhered to many times since. Its Bureau of Motor Carriers on Dec. 1, 1938, issued and published its Ruling No. 42 in which the question was put whether a motor carrier primarily engaged in intrastate commerce was exempt in carrying interstate agricultural commodities, and the answer was that the lately amended exemption under discussion "does not apply in cases in which other commodities are transported in the carrier's motor vehicle for compensation, even though the latter transportation is in intrastate commerce".

We are informed that this Ruling is considered to be still in effect. We see no sufficient reason to reject it. But it says nothing about *the time* of transporting the other commodities. We are referred to only one decision, refusing a certificate, where this time element is adverted to, Albert Payne Warner Carrier, 9 M.C.C. 614. The view was there expressed which the Commission now asserts is correct, but it was not the ground of decision, for immediately before a finding was made that a number of other carriers were already doing the work for which the certificate was asked, and "applicant has failed to sustain the burden of showing that such other carriers are not satisfying the public need and convenience". This was the ground finally announced for refusing a certificate. This decision does not show a settled construction by the Commission entitled to great weight. Even if there be such, we may not follow it if clearly wrong. The only judicial decision concerning this exemption which has been found is United States v. Chadwick, D.C., 39 F.Supp. 204, 206. The point ruled there was that an indictment need not negative the exception or exemption. The judge did say: "The motor vehicle must be used exclusively for the hauling of agricultural commodities", but the facts as to the other hauling were not apparent, and his use of the word "exclusively" was an inadvertent misuse of it, for that word had been taken out of the exemption by the amendment of June 29, 1938, 52 Stats. page 1237, 49 U.S.C.A. § 303 (b) (6), and the present language substituted. It was the word "exclusively" in the original 1935 Act that seems to have started the Commission on its very strict construction of this exemption.

What then do the words "are not used in carrying any other property" mean? They are in the present tense, which ordinarily imports present action. They do not mean "have not in the past been used and will not be used in the future". We should not write that meaning into them without good reason. It is true that the present tense may signify habitual action, but that meaning is not contended for by the Commission. Its contention is that a single use at any time of a truck for the carriage of

"other property" for hire excludes the truck from the exemption, we suppose so long as its ownership is unchanged. This is so unreasonable and so crippling both to intrastate carriage for hire and to the free interstate carriage of the privileged commodities, and even contrary to the general policy of the legislation, that it cannot be the true legislative intent. The general policy of the Interstate Commerce Act is expressly stated and required to be observed in Section 1, See 49 U.S.C.A. preceding section 301. It includes "to co-operate with the several States and the duly authorized officials thereof". Part II in its second section, 49 U.S.C.A. § 302(b), states: "Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof." There is to be cooperation and not enmity against intrastate commerce. But the proposed construction makes war on the intrastate business which Dunn has been authorized to do by the officials of the State, by requiring him to take some or all of his trucks out of intrastate commerce if he would haul cotton with them into another State under this exemption. This construction also makes war on the very interstate transportation which the exemption was plainly intended to foster and encourage. It is its purpose to free the transportation interstate of the favored commodities, particularly agricultural products, from the general regulation of interstate commerce by the Commission except as to fitness of drivers and trucks. A like favor has been shown to agricultural commodities in numerous other Acts of the period. To get a certificate or permit from the Commission involves much delay, inconvenience and expense, and often disappointment. Relief from this is offered in order to aid the prompt and free transportation of the named commodities, which transportation is usually seasonal and intermittent, but often urgent because it is of perishables, as fruits, vegetables and fish. The Commission, in Monroe Common Carrier, 8 M.C.C. 183, at page 185 modified the extreme strictness of its construction of the original word "exclusively", saying: "Upon mature consideration, however, we do not believe that a proper construction of the Act requires an interpretation which would destroy the exemption. * * * It is rare for a motor vehicle to be used for no other purpose than the carriage of agricultural commodities. Such carriage is usually seasonal or intermittent. At other times the owner of the truck will put it to other use. * * * If the word 'exclusively' were so strictly construed * * * the exemption provision would have little applicability." Probably a large majority of intrastate truckers for hire having no fixed routes are small operators having one or two trucks. They constitute the reserve to be drawn on under this exemption seasonally or in emergency. When called on to move a load of vegetables and fruits or other privileged commodities to another State they could not afford to buy a new truck for the purpose and dedicate it wholly to such occasional use, nor take the time and trouble to go to Washington to get an authority from the Commission and qualify under it. The exemption would not in most cases work to achieve its aim. It is true that Dunn is not hauling interstate perishable commodities, but the language was made to cover all situations to which it applies and its construction must take them all into account. Dunn in 1946 used his five trucks to make nineteen interstate hauls, less than four trips in a year for each truck. Are they all disqualified in 1947 from serving the privileged commodities in finding a market beyond the State under the exemption? Can they ever be purified from the taint of having hauled other property for hire? Did Congress intend to create any such taint? We do not think so.

Judgment affirmed.