INTERSTATE COMMERCE COMMISSION
v. SERVICE TRUCKING CO., Inc.
No. 10196.

United States District Court
E. D. Pennsylvania.
May 25, 1950.

Edward A. Kallick, U. S. Atty., Philadelphia, Pa., for plaintiff.

John Harper, Philadelphia, Pa., for defendant.

534

KIRKPATRICK, Chief Judge.

In this action the Interstate Commerce Commission asks for judgment enjoining the defendant from operating as a common carrier in interstate commerce unless it applies for and receives a certificate of public convenience and necessity from the Commission. All relevant facts have been stipulated, and the stipulation is adopted as the Court's findings of fact.

Part II of the Interstate Commerce Act, 49 U.S.C.A. § 306, provides that no common carrier by motor vehicle shall operate without a certificate of public convenience and necessity. Sec. 303(b) exempts from this requirement "(6) motor vehicles used in carrying property consisting of * * * agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation".

The defendant, a trucking company owning more than 50 trucks, carries dressed poultry from various packing plants in Maryland to Chicago where it delivers it to poultry jobbers, meat packing concerns, chain stores, etc. At Chicago the same trucks pick up and transport to Philadelphia loads of eggs, in the shell and packed in crates. The eggs are carried in the same trucks which brought the poultry to Chicago, operated by the same drivers who receive wages computed for the round trip. The defendant does not transport dressed poultry and eggs in the same vehicle at the same time. The defendant holds a certificate of public convenience and necessity covering the transportation of the poultry to Chicago and the question is whether it must also have a certificate for its transportation of eggs from Chicago to Philadelphia.

Does Sec. 303(b) exempt the defendant's Chicago-Philadelphia operation? The Commission contends that it does not, because the same vehicles which transport the poultry (which it says is a manufactured product) transport the eggs (which it agrees are not). The defendant's position is (1) that dressed poultry is not a manufactured product but (2) that even if

it is, it may transport eggs without a certificate so long as it does not carry any manufactured products in the same truck at the same time. Of course, if dressed poultry is not a manufactured product the defendant's whole operation is exempt. That question is an extremely difficult one. Each of the parties in the present case has been on both sides of it at various times and the Commission is now engaged in a re-examination of the whole question. However, it need not be decided in this case because I am satisfied that the exemption applies unless the carrier who transports exempt commodities also transports nonexempt products at the same time in the same vehicle.

In Interstate Commerce Commission v. Dunn, 166 F.2d 116, the Circuit Court of Appeals for the Fifth Circuit decided that the exemption applied to the carriage of purely agricultural commodities, although the same trucks at other times transported manufactured products, holding that the Act meant that the exemption would not be defeated unless the vehicles carrying the agricultural commodities carried manufactured products at the same time. The facts of the Dunn case are like those in the present case with the single exception that Dunn's transportation of manufactured commodities was entirely intrastate while his transportation of unmanufactured products was entirely interstate, whereas in the present case both operations were interstate. The distinction does not impair the force of the decision as a precedent. True, the Court in the Dunn case referred, in its opinion, to the intrastate character of the nonexempt operation and stressed the desirability of avoiding interference by the Commission with the right of the state to regulate intrastate commerce, but, whether or not the Court could have grounded its decision on that point, it did not do so, but placed it squarely upon the interpretation of the statute for which the defendant now contends. The Court said, 166 F.2d at page 117, "What then do the words 'are not used in carrying any other property' mean? They are in the present tense, which ordinarily imports present action. They do not mean

'have not in the past been used and will not be used in the future'."

■ While not absolutely bound to follow the decision, I ought to do so unless convinced that it is entirely wrong. In spite of the forcefully presented arguments for the Commission, I am not so convinced but, on the whole, think that the Dunn case was rightly decided.

■ The Commission relies primarily upon a course of administrative rulings in which the Commission required carriers, in the same situation as this defendant, to get operating authority. I recognize the rule of statutory interpretation which accords great weight to the rulings of regulatory bodies, but it seems to me that where the question is one not wholly dependent upon matters within the expert, technical or statistical field in which the regulatory body is preeminently qualified to judge, but which primarily involves jurisdiction, the force of the administrative rulings is less than it would othewise be. The same argument was considered by the Court in the Dunn case, which was decided February 5, 1948. The Court doubted that there was such a settled construction by the Commission as would be entitled to great weight but went on to say "Even if there be such, we may not follow it if clearly wrong."

■ The same general considerations apply to the argument based on the reenactment of Sec. 303(b) (6) in 1940 when Congress amended the section by inserting the word "ordinary" before the word "livestock". At that time the Commission's decision in Application of Warner, 9 M.C.C. 614, was, so far as I understand the rulings, the only one in which the Commission's view upon the exact point presented here was stated. However, the Warner application was refused on the ground that other carriers satisfied the public need and convenience and that further competition was not warranted. Whatever the exact import of the Commission's rulings, implied adoption of judicial construction upon the reenactment of a statute is but one factor in the total effort to give fair meaning to statutory language. Federal Communications Commission v. Columbia Broadcasting System, 311 U.S. 132, 61 S.Ct. 152, 85 L.Ed. 87, and, of course, the same is true of reenactment after administrative construction.

The Court in the Dunn case was undoubtedly aware of the rule for strict construction of exemptions and reached its conclusion nevertheless. The rule will not be applied to the extent of requiring an interpretation contrary to what appears to be the intent of the law.

Judgment for the defendant.