**CHESAPEAKE & OHIO RY. CO. v. ELK REFINING CO. et al.**

**No. 6158.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 17, 1950.

Decided Dec. 13, 1950.

---

Bert H. Early, Huntington, W.Va. (C. W. Strickling and Fitzpatrick, Strickling, Marshall & Huddleston, all of Huntington, W.Va., on the brief), for appellant.

J. Campbell Palmer, III, Charleston, W. Va., for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are cross appeals in a railway crossing accident case. Plaintiffs in the court below were the Elk Refining Company, one of whose gasoline tractor-trailer units was struck and damaged at a railroad crossing, and the Fidelity-Phenix Fire Insurance Company, the insurance carrier on the damaged vehicle. The defendant was the Chesapeake & Ohio Railway Company, one of whose locomotives caused the damage in backing across the crossing. The case was heard by the District Judge without a jury and judgment was entered in favor of the plaintiff for the sum of $7,846.99, which includes $4,930.19 as the value of the trailer that was completely destroyed, less an allowance for salvage, and $2,916.80 for the cost of repairing the tractor, which was badly damaged but not beyond repair. Both sides have appealed. Defendant complains because of the finding of liability, plaintiffs because there was not included in the award special damage suffered from loss of use of the vehicle or any allowance on account of interest prior to the trial, which was had approximately two years after the collision.

■ On the question of liability, we do not think that the findings of the trial judge should be disturbed. The accident occurred at a blind crossing, where an industrial siding branches off from the line of the defendant railway and crosses U. S. Highway No. 61 near Marmet in Kanawha County, West Virginia. The evidence shows that the crossing is an exceedingly dangerous one, as the railway track on both sides of the highway is in a cut and the highway on both sides of the railway track is likewise in a cut, so that engines and cars approaching on the track cannot be seen from cars traveling the highway nor can cars on the highway be seen from the engines on the track. The track, moreover is so imbedded in the highway that it cannot be seen by those driving cars approaching from the west until they are very near to it, and the only crossing sign giving notice of its presence is a crossbuck sign 50 feet to the east of the crossing and on the left side of the highway as one approaches the crossing from the west. No other signs had been erected at the crossing by the defendant although it was required by statute to erect and maintain suitable signs and the manual of the American Association of Highway Commissioners required crossbucks to be on both sides of a grade crossing, at a point 15 feet from the nearest rail, except on minor spur tracks where a member of the train crew would guard the crossing during its use.

At the time of the accident the tractor-trailer unit was approaching from the west when it was struck by a locomotive backing out of the blind crossing from the north. No trainman was sent ahead to guard the crossing and the driver of the tractor-trailer testified that he heard no crossing signals until just before he was struck. He says that he was proceeding carefully and had slowed down to around 15 or 20 miles an hour (later estimated to be 23) when he saw the crossbuck sign ahead of him and was looking for the crossing but.

did not see it until within forty or fifty feet of the track; that he then saw the engine bearing down from the left and so close upon him that his only hope of safety lay in speeding up and trying to get across the track, as he was too near to stop in time to avoid a collision; and that he did speed up and had almost succeeded in clearing the track when struck by the locomotive.

A statute of West Virginia, Code, 17-19-13a, required trucks hauling gasoline to stop at all railroad crossings and made failure to do so prima facie evidence of negligence.

The trial judge found the defendant guilty of negligence and exonerated the driver of the tractor-trailer of contributory negligence, finding the facts specifically in the judgment, and setting forth his reasons in a memorandum opinion as follows:

"I find as a fact that the defendant was negligent in the operation of the train at this crossing. The acts of negligence that I find were: failure to use a flagman to warn traffic of the approach of this train, in view of the peculiarly dangerous character of the crossing, and the fact that it is a spur track and not a main line; and further, the defendant was negligent in not maintaining a crossing signal which would sufficiently apprise the public that the crossing was there. And I find as a fact that the driver of plaintiff's truck was not contributorily negligent, in view of all the circumstances of this case, and of the obscurity of the track when approaching the crossing from the west. I find that notwithstanding the statute which requires a truck hauling gasoline to stop before crossing a railroad track, that since the driver was not familiar with this crossing, and since an ordinarily careful and prudent person wouldn't be required to observe that it is a crossing until he gets very close on it, that the driver did not have time to bring his vehicle to a stop after, in the exercise of reasonable care, he saw that he was approaching this crossing."

We think that the evidence in the case amply supports these findings of the trial judge, who was thoroughly familiar with the locality in which the accident occurred and had the advantage of seeing and hearing the witnesses. Certainly there is nothing in the record which would justify this court in reversing them as clearly wrong.

We think, however, that the trial judge was in error in limiting the award to the value of the trailer, less salvage, and the damage to the tractor without awarding anything for the special damage from loss of use or for interest. With respect to the special damage, it appears that the trailer was almost brand new, having been used for only three days and driven only 1,400 miles. There is nothing to show that its market value at the time of the accident was less than what had been paid for it only a short while before; and the insurance company made settlement under its policy on this basis. It had insured the trailer for $5,450, which was the purchase price less $30.19, and paid under its policy the full face amount thereof less a $50 deductible allowance and $600 salvage received from the wreck of the trailer. The amount allowed for the tractor was the expense of repair and for the trailer the cost less salvage, with no allowance whatever for the special damage for loss of use, although it appeared from uncontradicted evidence that a trailer in replacement and the repaired tractor were not available to take the place of the wrecked unit until sixty days had elapsed and that in the meantime it had been necessary to hire another unit at an expense of $765.64.

We think that the expense to which the refining company was put in hiring another tractor-trailer unit to take the place of that which had been damaged until the tractor could be repaired and another trailer obtained should have been allowed as an element of damages. It was certainly damage which the Elk Refining Company sustained resulting from the wrecking of its tractor-trailer and recovery therefor must be allowed if that plaintiff is to be made whole for the injury it has sustained. The right to recover such special damage resulting from injury to property, where the damage is established with reasonable certainty, as it is here, is well established by authority; and rental

reasonably and necessarily paid for the use of other property to take the place of that which has been damaged, until it can be repaired or replaced, is a fair measure of such special damage. See A. Mortellaro & Co. v. Atlantic C. L. R. Co., 91 Fla. 230, 107 So. 528; Conley v. Kansas City R. Co., Mo.App., 259 S.W. 153; Cincinnati Traction Co. v. Feldkamp, 19 Ohio App. 421; Borey v. Manno, 19 La.App. 270, 140 So. 109; Rogers v. Interurban St. R. Co., 84 N.Y.S. 974; note 169 A.L.R. at p. 1092; 15 Am.Jur., p. 539.

■ The trial judge set off the use which the refining company had made of the tractor-trailer beforehand against the use of which it was deprived as a result of the accident; but we know of no principle upon which this can be sustained. There is nothing to indicate that the value of the trailer, which was practically new, was less than cost; and the refining company was entitled to recover for the loss of the trailer on this basis without reference to the use that had been made of it. There can be no question as to the right to recover the cost of repairing the tractor without reference to its use. The refining company was entitled to recover as special damage, in addition to these items, the cost of hiring another unit to take the place of that which had been damaged until the tractor could be repaired and a new trailer obtained; and the use of the unit prior to the accident had nothing to do with the matter.

■ And we think that the judge was in error in not including in the award interest to the time of trial. The damage was done in May 1948, and the award was not made until May 1950, two years later. While not liquidated in the strict sense of the term, the damage was readily ascertainable at the time; and, if plaintiffs are allowed in the judgment only the amount of the damage that was sustained two years before the award, it is manifest that they have not been awarded full compensation. An award two years after an injury occurs is certainly not the equivalent of an award made at the time of the injury; and the great weight of authority is to the effect that full compensation for damage to or destruction of property requires that, even in the case of unliquidated demands, account be taken of the period that has elapsed between the damage and the award and that allowance be made for interest. In some states this allowance is made as a matter of legal right, in others it is within the discretion of the assessor of the damages. See Am.Jur. p. 580; 25 C.J.S., Damages, § 53, pp. 543–544; note 96 A.L.R. 18, 211, 227; note 111 A.L.R. 1299, 1307 and cases there cited. The reason for the rule is well stated by the Supreme Court of Utah in Fell v. Union Pacific R. Co., 32 Utah 101, 88 P. 1003, 1005, 28 L.R.A.,N.S., 1, 13 Ann.Cas. 1137, where after reviewing the authorities, the court said:

"While the foregoing by no means constitute all the authorities that could be cited upon the proposition, they are quite sufficient to show that the rule has become general, and that the allowance of interest in cases of torts to property is in harmony with the trend of modern authority. * * Is there any reason why a person sustaining injury and damage to his property from the negligent act of another should not receive just what he has lost as nearly as this may be accomplished in a court of justice? If a person's property is destroyed or damaged, why is he not entitled to be compensated to the full extent of its value in money so that he may replace the same with other property of a like nature? If on the day of its injury or destruction he restores or replaces it with his own money, why is he not entitled to interest on that money to the date of repayment? If he had loaned the money to some one, he certainly would be entitled to interest, and, if he borrowed it from some one, he would likely have to pay interest for its use. By being awarded legal interest, therefore, he is simply placed in statu quo, and nothing short of this is full compensation, and that is just what the law aims to accomplish. Is it an answer to say that the damages are unliquidated, and therefore interest is not to be allowed? This, to our minds, is no reason at all in case of injury

to or destruction of property. In all such cases the party sustaining the loss is limited in his recovery to the market or actual value of the property at the time of the injury or destruction. Moreover, he must establish the amount of the loss by some fixed rule or standard, and the evidence must be confined thereto, and either the court or jury must find the value in accordance with the evidence. In the class of cases, therefore, where the damage is complete, and the amount of the loss is fixed as of a particular time, there is—there can be—no reason why interest should be withheld merely because the damages are unliquidated."

And we think that the holding in West Virginia is in accord with this general rule. In Talbott v. West Virginia C. & P. R. Co., 42 W.Va. 560, 26 S.E. 311, involving the right to recover damages for the killing of a horse by a railroad company, the court in the syllabus laid down the rule that "Compensatory damages are such as measure the actual loss, and are given as amends therefor"; and in the opinion said: "They [the jury] had the right to add the interest from the time of the loss to the finding of their verdict". Defendant relies upon Shaw v. Monongahela R. Co., 110 W.Va. 155, 157 S.E. 170, 171; but that case dealt, not with damages readily ascertainable, as in the case of the damage to or destruction of property, but with the damage due to the erection of a viaduct in front of property. In discussing the right to award interest as damages, however, the court clearly recognized the propriety of awarding interest in a case such as this, saying:

"There undoubtedly are situations in which the allowance of interest from date of injury to, or misappropriation or destruction of, property to the date of verdict may properly be included, but not so in a case such as at bar.

" 'Interest is denied when the demand is unliquidated for the reason that the person liable does not know what sum he owes, and therefore cannot be in default for not paying. Gross damages which are wholly at large, depending on no legal standard, and which are referred to the discretion of a jury, can never be made certain except by accord or verdict. There can be no default in respect to their payment and they are never enhanced by interest. But demands based upon market values susceptible of easy proof, though unliquidated until the particular subject of the demand has been made definite and certain by agreement or proof, are not so uncertain that no default can be predicated of any delay in making payment. A demand is unliquidated if one party alone cannot make it certain,—when it cannot be made certain by mere calculation; but the allowance of interest as damages is not dependent on this rigid test.' 1 Sutherland on Damages (4th Ed.) § 347.

" 'As a general rule, interest is not recoverable in tort actions in the absence of a statutory provision to the contrary, for the reason that such damages are ordinarily unliquidated in their character.' 8 Ruling Case Law, p. 536.

"Many cases are in accord. This general rule is to be contrasted with that found in cases where the amount of the injury is definitely ascertainable as of a fixed time. In such instances, interest by way of damages for withholding compensation may be allowed as of right. 17 Corpus Juris, p. 826. Such were the situations in our cases of McCullough v. Clark, 88 W.Va. 22, 106 S.E. 61; Pittsburgh & West Virginia Gas Co. v. Gas Co., 84 W.Va. 449, 100 S.E. 296, 300, 7 A.L.R. 901; and Cresap v. Brown, 82 W.Va. 467, 96 S.E. 66. In those cases interest was allowed from the date of the wrong to the date of the fixing of the amount of the recovery. In each of them, however, the general rule as above stated was recognized, but it was not applied because of the presence of certainty and exactitude of basis for amount of recovery as of the date of the wrong."

For cases in which interest has been allowed in computing damages in fact situations similar to those here involved, see Smith v. Waterbury & M. Tramway Co., 99 Conn. 446, 121 A. 873; Louisville & N. R. Co. v. Faust, 30 Ga.App. 310, 117 S. E. 761; Schulte v. Louisville & N. R. Co.,

128 Ky. 627, 108 S.W. 941; Mead v. Central Pa. Traction Co., 54 Pa.Super.Ct. 400; Galveston, H. & S. A. R. Co. v. Matula, Tex.Sup., 19 S.W. 376; International-Great Northern R. Co. v. Ragsdale, Tex. Civ.App., 11 S.W.2d 368.

The reason underlying the award of damages for damage to or destruction of property is the same as that which applies in awarding damages or compensation in eminent domain cases, viz., to give the injured party full compensation for the loss that he has suffered; and there can be no question but that the propriety of awarding interest in eminent domain cases is fully recognized in West Virginia. See State v. Painter, 120 W.Va. 486, 199 S.E. 372, 374, where the court said: "If the landowner is deprived of his property before payment, it is only fair and just, and consonant with the constitutional provisions herein referred to, that he be paid compensation for the time he is dispossessed of his property until final payment."

We do not think, however, that plaintiffs are entitled to the legal rate of interest provided by statute but merely such as will compensate them for the delay in recovering damages when consideration is given to the state of the money market at the time. We think that, under the circumstances here, they will be adequately compensated by an award of 3 per cent for the period prior to judgment. We think, too, that interest should not be allowed for the period of around 60 days covered by the award of damages for loss of use. 25 C.J.S., Damages, § 53, p. 544. The award will be increased, therefore, by the sum of $765.64 as damages for loss of use, and interest at 3% will be allowed from Aug. 1, 1948, to May 31, 1950, or the sum of $473.69.

The judgment will accordingly be modified by increasing the award to $9,086.32, which will bear interest at the legal rate of 6 per cent from May 31, 1950; and as so modified the judgment will be affirmed. The costs of both appeals will be taxed against the railway company.

Modified and affirmed.