## INTERSTATE COMMERCE COMMISSION v. SERVICE TRUCKING CO., Inc.

No. 10255.

United States Court of Appeals Third Circuit.

Argued Oct. 13, 1950.

Decided Jan. 11, 1951.

James Y. Piper, Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., Edward A. Kallick, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellant.

David G. MacDonald, Washington, D. C. (John Harper, Philadelphia, Pa., on the brief), for appellee.

Neil Brooks, Washington, D. C. (Carl R. Bullock, Henry A. Cockrum and Donald A. Campbell, all of Washington, D. C., Attorneys, U. S. Department of Agriculture, on the brief), for Secretary of Agriculture as amicus curiæ.

Before ALBERT LEE STEPHENS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a judgment in the district court in favor of the defendant in a suit brought by Interstate Commerce Commission under Part II, Section 222(b) of the Interstate Commerce Act[1], 49 U.S.C.A. § 322(b), to restrain the defendant, a common carrier by motor vehicle, from continuing to engage in transporting crated eggs in the shell without first obtaining authorization from the Commission in accordance with Section 206(a) of the Act[2] 49 U.S.C.A. § 306(a).[3]

Appellee trucking company transports dressed poultry from Delaware, Maryland and Virginia to the middle west. It holds a certificate of convenience and necessity from the Commission for that kind of operation. It is the transporting of shell eggs by those trucks on their return trips which gives rise to the present dispute.

Part II, Section 203(b) (6) of the Act[4], 49 U.S.C.A. § 303(b) (6), provides, inter alia, that motor vehicles used in carrying agricultural commodities (not including manufactured products thereof) are exempt from the certificate provisions of Section 206(a) "if such motor vehicles are not used in carrying any other property, or passengers, for compensation; * * *." The Commission urges that even though the motor vehicles carrying the eggs would ordinarily be within the exemption, a certificate of convenience and necessity must be procured to cover them because they are used at other times to transport commodities not protected by Section 203 (b) (6). Appellee was upheld by the district court in its contention that the exemption applied to its trucks because they were not used at the same time to transport commodities not listed in the critical section. Appellee had also defended on the ground that the dressed poultry which it transported on its outbound trips was not a manufactured product of an agricultural commodity, and therefore that the entire transportation involved was in the exempt class. The Department of Agriculture appears on this appeal as amicus curiae in support of that argument. The point was not passed upon below and need not be considered by us as we are in accord with the result reached by the District Judge, which, in effect holds that the exemption applies unless the carrier who transports agricultural commodities also transports manufactured products thereof at the same time in the same vehicle.[5]

The appellant says that its construction of the statutory exemption provision is supported by the following: the legislative history of that provision; prior interpretations by the appellant; the rule for adoption by the courts of administrative interpretations of a regulatory agency; acquiescence by Congress in the appellant's interpretation of Section 303(b) (6); and the rule for strict construction of exemptions from the general applicability of

1. 49 Stat. 564; amended 54 Stat. 928 and 63 Stat. 488.

2. 49 Stat. 551; amended 52 Stat. 1238 and 54 Stat. 923.

3. Section 206(a) of the Interstate Commerce Act reads in part as follows: "Except as otherwise provided in this section and in section 310a, no common carrier by motor vehicle subject to the provisions of this chapter shall engage in any interstate or foreign operation on any public highway, or within any reservation under the exclusive jurisdiction of the United States, unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations: * * *."

4. 49 Stat. 544; amended 52 Stat. 1029, 52 Stat. 1237 and 54 Stat. 919, 920.

5. For the district court opinion see 91 F. Supp. 533.

remedial statutes. Finally, appellant attempts to distinguish I.C.C. v. Dunn, 5 Cir., 166 F.2d 116, 118, the only reported appellate case in point and relied upon by the lower court in its decision.

Though the intent of Congress seems to have been " * * * to free the transportation interstate of the favored commodities, particularly agricultural products, from the general regulation of interstate commerce by the Commission except as to fitness of drivers and trucks",[6] the legislative history of the provision does not pinpoint our specific issue. We agree, however, that the interpretation sought by appellant " * * * is so unreasonable and so crippling * * * to the free interstate carriage of the privileged commodities, and even contrary to the general policy of the legislation, that it cannot be the true legislative intent." [7]

■ The Commission cites a number of its decisions in which it has construed the particular statutory exemption, all prior to the judgment appealed from and all contrary to that judgment. It contends that under the principle which entitles settled contemporaneous administrative rulings to great weight the district court should have reached an opposite conclusion. However, as said by Judge Kirkpatrick in his fine opinion below, " * * * where the question is one not wholly dependent upon matters within the expert, technical or statistical field in which the regulatory body is preeminently qualified to judge, but which primarily involves jurisdiction, the force of the administrative rulings is less than it would otherwise be." [91 F. Supp. 533, 535.] In I.C.C. v. Dunn, supra, the court doubted that the same interpretation contended for in the instant appeal was " * * * a settled construction by the Commission entitled to great weight [but] even if there be such, we may not follow it if clearly wrong." 166 F.2d at page 117. And we agree with the conclu-

sion of that opinion in respect to the all important phrase of the exemption reading "are not used in carrying any other property". The opinion says, 166 F.2d at pages 117, 118, "What then do the words 'are not used in carrying any other property' mean? They are in the present tense, which ordinarily imports present action. They do not mean 'have not in the past been used and will not be used in the future'. We should not write that meaning into them without good reason. It is true that the present tense may signify habitual action, but that meaning is not contended for by the Commission. Its contention is that a single use at any time of a truck for the carriage of 'other property' for hire excludes the truck from the exemption, we suppose so long as its ownership is unchanged." [8]

We think the Commission decisions interpreting 203(b) (6) of the Act are clearly wrong. In this connection, it should be pointed out that the Commission itself has not invariably adhered to a narrow construction of the portion of the Act in question. The Commission has held that "if such vehicles are not used, by the person who is conducting the operation, in carrying any other property, or passengers, for compensation",[9] the exemption is available to the operator who seeks to transport only unprocessed agricultural products. Applying that finding to the case at bar, it would mean that appellee could obtain the benefit of the exemption if he leased his trucks to another certified carrier for the transportation of the alleged "manufactured products".

After discussing this problem, Commissioner Lee, in his Newton dissent, supra, p. 793 said, "I believe that the correct interpretation of these provisions of the act is that all transportation, in interstate or foreign commerce, of 'livestock, fish (including shell fish), or agricultural commodities (not including manufactured prod-

---

6. I.C.C. v. Dunn, supra, at page 118.

7. I.C.C. v. Dunn, supra, at page 118.

8. For a good discussion of the meaning of the disputed proviso see dissenting opinion in Lester C. Newton Extension

of Operations—Frozen Foods, 43 M.C.C. 787, at p. 793.

9. John H. Monroe Common Carrier Application, 8 M.C.C. 183. See also, Newman Contract Carrier Application, 44 M.C.C. 190.

ucts thereof)' [10] performed with motor vehicles on which no other commodities are transported for compensation at the same time falls within the exemption regardless of who controls and operates such vehicles." We agree.

Appellant asserts that, after the amendment of the Act on June 29, 1938, which inserted the language in question and prior to the subsequent revisions of the Act, it had, on numerous occasions, applied the sought for interpretation of the section. From this premise the Commission argues that Congress' failure to amend the Act to effect the Commission construction amounts to an acquiescence by Congress in the Commission's viewpoint. But, as said in Federal C. C. v. Columbia Broadcasting System, 311 U.S. 132, 137, 61 S.Ct. 152, 154, 85 L.Ed. 87, "We are not, however, willing to rest decision on any doctrine concerning the implied enactment of a judicial construction upon reenactment of a statute. The persuasion that lies behind that doctrine is merely one factor in the total effort to give fair meaning to language." The situation in that matter concerned the contention that the construction given a statute in a Court of Appeals opinion was impliedly enacted by Congress when it passed new legislation on the specific point at issue. We see no reason why a different conclusion as to applicability of the suggested rule should be reached on the instant facts.

The Commission advances the doctrine requiring strict construction of exemptions to general regulations as a reason for adopting its interpretation. This rule should not be applied to defeat the intent of the law. It did not deter the Dunn Court from reaching its conclusion.

. The suggested distinction of the Dunn decision from the present appeal is not sound. The principal ground for such distinction rests on the proposition that the Fifth Circuit case was an action by the Commission to remove from the exemption a carrier transporting agricultural goods in interstate commerce and manufactured commodities in intrastate commerce. But the court did not base its opinion on the fact that Dunn's carriage of manufactured commodities were intrastate. The language covering the interpretation of the statute already cited was the foundation of the Dunn decision.

Nor does appellant's own citation of legislative history sustain the distinction it seeks, for it is there shown that the Commission attempted to secure legislation which would not debar from the exemption those vehicles carrying other property or passengers in intrastate commerce. The language which it was said would accomplish this purpose was left out of the legislation as enacted.

There is little merit, if any, in the other grounds of distinction urged.

The judgment of the District Court will be affirmed.