The NEW YORK CENTRAL RAILROAD COMPANY, a corporation, Appellant,

v.

Larus CASTO, Appellee.

No. 6845.

United States Court of Appeals Fourth Circuit.

Argued Oct. 14, 1954.

Decided Nov. 8, 1954.

Robert H. C. Kay, Charleston, Va., for appellant.

Donald L. Schaffer, Charleston, Va. (Philip R. Simms, Charleston, Va., on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and BOREMAN, District Judge.

DOBIE, Circuit Judge.

Larus Casto brought a civil action in the United States District Court for the Southern District of West Virginia against The New York Central Railroad Company (hereinafter called Central), to recover damages sustained in a collision between the automobile that Casto was driving and an engine of Central. Central moved for a directed verdict at the close of all the evidence; this motion was overruled, and the jury returned a verdict in favor of Casto for $7,000. Central then moved for judgment notwithstanding the verdict; this motion was overruled, and judgment on the verdict was entered for Casto. Central has appealed to us. The only question that we need to decide is whether Casto was guilty of contributory negligence as a matter of law.

Casto, a young man about twenty years old at the time of the accident, moved to Poca, West Virginia, about one year prior to the date of the accident. He had lived in West Virginia previously

but was not entirely familiar with the country around Poca. At approximately ten o'clock on the night of December 23, 1952, he left his home to buy some paper bags for his father; he was driving his father's 1941 Dodge automobile. When no bags could be found in Poca, the two teen-age companions whom Casto had picked up suggested that they get the bags at Brown's Store in Hometown, West Virginia, a town some six or seven miles away.

The boys drove to Hometown and turned onto a rough dirt road that runs south down across Central's railroad tracks. Brown's Store is located on the West side of this road some forty feet south of the railroad crossing. Casto drove across the tracks and, seeing that Brown's Store was unlighted, proceeded to an intersection near the end of the road, which comes to a dead end a little over two hundred feet south of the crossing, turned the car around and drove back toward the railroad crossing on the same road.

This crossing is some forty inches higher than the road level, and when Casto reached the beginning of the grade leading up to the crossing, about fifty or sixty feet from the south rail of the crossing, he slowed down from a speed of twenty-five miles per hour to a speed of approximately ten or fifteen miles per hour and shifted into second gear. He continued up the grade at this speed, and when the front wheels of the car dropped down over the near rail of the track, he stopped, looked to his right, looked to his left, saw the headlights of Central's engine bearing down upon him from about forty feet away, shifted the car into reverse and passed out just before the engine struck the car.

The engine smashed into the car at the left front door post, knocked it off the south side of the track, continued up the track about three or four hundred feet, stopped and backed up to the scene of the collision after giving three sharp blasts on its whistle. Casto suffered several injuries and was confined to his bed for some months.

There are a few buildings near the south side of the railroad crossing. The nearest of these is Brown's Store which is forty feet away. The record shows that Casto had an unobstructed view down the tracks to his left for a distance of nearly fifteen hundred feet when he was clear of Brown's Store and this view improved as he traveled the last forty feet to the crossing. The night was dark and clear with no moon. There were no warning signs on either side of the tracks which were set into the roadway at the crest of the incline.

The train, an engine and caboose, was traveling at a speed of approximately forty miles per hour. The engine was equipped with double sealed beam headlights which were throwing a beam of light extending eight hundred feet ahead of the engine, bright enough to distinguish a person at that distance. The tracks on the side from which the train approached the crossing are straight for some seven hundred and sixty feet and beyond that there is a gradual curve to the south. Evidence shows that the train's lights were shining across the crossing at the time of the collision and had been shining across it for some time prior to the collision.

There is a conflict in the testimony as to whether any whistle or bell was sounded before the collision. A discussion of this question is unnecessary for we shall assume, without expressing any opinion, that the Trial Court's finding of primary negligence on the part of Central, contributing to the accident, was correct.

There is some evidence to indicate that Casto had been over this crossing once before the night of the accident. In any event, he had just crossed it, going in the opposite direction, a few seconds before the collision. Casto testified that he knew he was approaching the tracks as he started up the grade, that he knew the tracks were just ahead, that he did not look to the right nor to the left until his front wheels dropped down over the near rail and that he could have stopped the car within five

feet, if necessary. He testified that he never saw the train nor its light until he had stopped on the tracks and that he did not know why he had stopped on the tracks.

In view of Casto's testimony, we hold that he was guilty of contributory negligence as a matter of law and that the judgment of the District Court must be reversed.

Chapter 17C, Art. 12, § 1 of the Code of West Virginia, provides:

"Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

\*    \*    \*    \*    \*    \*

"(4) Any approaching railroad train is plainly visible and is in hazardous proximity to such crossing."

 Under the law of West Virginia, which controls here, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a violation of the requirements of this statute is *prima facie* evidence of negligence. Snyder v. Baltimore & Ohio R. Co., 135 W.Va. 751, 65 S.E.2d 74; Somerville v. Dellosa, 133 W.Va. 435, 56 S.E.2d 756; Chesapeake & Ohio Ry. Co. v. Elk Refining Co., 4 Cir., 1950, 186 F.2d 30, 32, 36 A.L.R. 2d 329.

As a general rule, it is the duty of a car operator approaching a railroad crossing to look for approaching trains and to look effectively. Detroit, T. & I. R. Co. v. Yeley, 6 Cir., 165 F.2d 375; Surdyk v. Indiana Harbor Belt R. Co., 7 Cir., 148 F.2d 795; cf. Auvil v. Western Maryland Ry. Co., 4 Cir., 19 F.2d 30. Under West Virginia law, such a requirement is not tempered by the failure of a railroad to observe all safety requirements. Gray v. Norfolk & W. Ry.

Co., 99 W.Va. 575, 130 S.E..139; Darling v. Baltimore & O. Ry. Co., 136 W.Va. 303, 69 S.E.2d 139.

Casto admitted that he did not look to either side as he approached the track. The overwhelming evidence shows that he could not possibly have avoided seeing the light of the train had he looked. Casto places great weight upon our decision in Chesapeake & Ohio Ry. Co. v. Elk Refining Co., 4 Cir., 186 F.2d 30. That case is clearly distinguishable from the instant case.

We must conclude that on the evidence before us, particularly the testimony of Casto himself, he was guilty of contributory negligence as a matter of law. It was, therefore, error for the District Court to overrule Central's motions for a directed verdict and for a judgment notwithstanding the verdict. The judgment of the District Court is reversed and the case is remanded to that court with instructions to enter judgment for defendant Central.

Reversed.