**FAWLEY MOTOR LINES, Incorporated, Appellant and Cross-Appellee,**

v.

**CAVALIER POULTRY CORPORATION, Appellee and Cross-Appellant.**

No. 7155.

United States Court of Appeals
Fourth Circuit.

Argued April 18, 1956.

Decided June 21, 1956.

Donald Cefaratti, Jr., Washington, D. C. (W. Edwin Cumberland, Washington, D. C., and W. W. Wharton, Harrisonburg, Va., on brief), for appellant and cross-appellee.

Robert J. Corber, Arlington, Va. (Steptoe & Johnson, Clarksburg, W. Va., on brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are appeals from a judgment in an action to recover excess freight charges collected by a motor carrier. The case was heard by the District Judge on a motion for summary judgment and a stipulation of facts by the parties. Judgment was rendered for the amount claimed without interest prior to judgment. Defendant has appealed from the judgment and plaintiff from the refusal to include therein interest on the excess charges from the time collected.

Plaintiff was a shipper of dressed poultry, defendant a common carrier by motor vehicle which had obtained a certificate of convenience and necessity and filed tariffs with the Interstate Commerce Commission pursuant to Part II of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq. These tariffs provided for a charge for refrigeration service only when such service was requested in writing by the shipper and specified on the bill of lading. At various times between May 1953 and May 1954 defendant in its capacity as a common carrier transported dressed poultry for plaintiff between Harrisonburg, Virginia, and various points in New York, New Jersey and Pennsylvania, collecting for such transportation the rates prescribed in its tariffs as filed with the Commission plus refrigeration charges of $1699.96. No request for refrigeration service had been made in writing by plaintiff nor had same been specified on the bills of lading as required by the tariffs. Plaintiff sued for the recovery of the refrigeration charges so collected and by timely motion asked that it be allowed interest thereon from time of payment.

Defendant denied liability on the ground that dressed poultry was an agricultural commodity the transportation of which was excluded from the terms of Part II of the Interstate Commerce Act by section 203(b) (6). The District Judge held that the dressed poultry was not an agricultural commodity within the meaning of that section, but that, even if it was held to be such a commodity, defendant was nevertheless bound by the tariffs which it had filed with the Interstate Commerce Commission as a common carrier and under which it had undertaken as a common carrier the transportation in question.

Since the decision below, the Supreme Court has held that dressed poultry is an agricultural commodity within the meaning of section 203(b) (6) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 303(b) (6), and that the ob-

taining of a certificate of convenience and necessity under the act is not a prerequisite to the use of motor vehicles for the transportation thereof in interstate commerce. East Texas Motor Freight Lines, Inc., v. Frozen Food Express, 351 U.S. 49, 76 S.Ct. 574. There is nothing in the decision, however, which relieves a common carrier transporting agricultural commodities in its capacity as common carrier from the binding effect of the tariffs which it has filed with the Commission to govern such transportation.

The purpose of Part II of the Interstate Commerce Act, formerly known as the Motor Carrier Act, was to bring motor carriers in interstate commerce under control of the Interstate Commerce Commission. This was accomplished by requiring carriers by motor vehicle engaged in interstate commerce to obtain from the Commission certificates of convenience and necessity. 49 U.S.C.A. § 306. It was recognized, of course, that it would be necessary to make exceptions to the general provisions of the act and section 203(b) (6), 49 U.S.C.A. § 303(b) (6), is one of the sections incorporated in the act for that purpose. It is brought forward into the United States Code under the heading "Vehicles excepted from operation of law". It is as follows:

"(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation;".

■ It is clear that the effect of this section is not to limit the liability of common carriers nor to affect the rates prescribed in the tariffs which they have filed as such, but to exempt vehicles engaged in the transportation named from the provisions of the act. This is made clear by the other sections with which this section is included and which exempt from the provisions of the act vehicles used for various purposes. It is made even clearer by the clause added to the section by the act of 1938, i.e. "if such motor vehicles are not used in carrying any other property, or passengers, for compensation". See I. C. C. v. Dunn, 5 Cir., 166 F.2d 116; I. C. C. v. Service Trucking Co., Inc., 3 Cir., 186 F.2d 400; United States v. Chadwick, D.C., 39 F. Supp. 204. The owner of a motor vehicle may use it for the purpose of transporting agricultural commodities in interstate commerce without obtaining a certificate of convenience and necessity, filing tariffs or complying with any other provisions of the act; but there is nothing in this exemption which forbids common carriers hauling agricultural commodities or filing tariffs to cover such hauling or which exempts them from the binding effect of the tariffs so filed. A carrier must abide by its published rates. Beaumont, Sour Lake & Western Ry. Co. v. Magnolia Provision Co., 5 Cir., 26 F. 2d 72, 73.

■ That a common carrier may haul agricultural commodities along with other commodities is clearly contemplated by the provision quoted, which grants the exemption only "if such motor vehicles are not used in carrying any other property, or passengers, for compensation." If vehicles are used for carrying other property for compensation, tariffs must be prescribed for the agricultural products so carried as well as for the other property; and these tariffs must, of course, be observed with respect to the agricultural products as well as to the other property. The dressed poultry here was transported as property to which the tariffs applied; and there is nothing in the record to show that it was not applicable to them, since there is nothing to show that the motor vehicles in which they were transported were not

used in carrying other property for compensation. Cf. United States v. Chadwick, supra.

Even if the effect of the statute were to free defendant from rate regulation with respect to commodities instead of with respect to the vehicles in which they are transported, defendant cannot escape being bound by the tariffs which it has voluntarily filed and which were a constituent part of the contract of carriage. At common law, therefore, as well as under the provisions of the statute regulating motor carriers, plaintiff is entitled to recover the amount collected in excess of the tariffs filed. Notwithstanding contention to the contrary, we think that this aspect of the case was expressly covered by the finding of the Judge below as follows [138 F.Supp. 585]:

"7. That the contracts of carriage for the transportation furnished plaintiff consisted of the bills of lading which expressly incorporated the applicable tariffs therein and the charges for refrigeration service assessed by defendant and paid by plaintiff constituted a breach by defendant of the contracts of carriage for which plaintiff is entitled to recover the amount of the charges."

On the question of interest, we think that plaintiff was entitled to recover interest on the excess charges from the time they were paid, as it became entitled to recover the excess paid as of that time. Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 239–240, 46 S.Ct. 73, 70 L.Ed. 242; Railroad Credit Corp. v. Hawkins, 4 Cir., 80 F.2d 818, 825–826; Chesapeake & O. R. Co. v. Elk Refining Co., 4 Cir., 186 F. 2d 30, 33–35, 36 A.L.R.2d 329; E. I. Du Pont De Nemours & Co. v. Lyles & Lang Const. Co., 4 Cir., 219 F.2d 328, 341–342.

For the reasons stated, the action of the court below in refusing to allow interest will be reversed and the case will be remanded in order that the judgment may be modified to include a proper allowance of interest. In other respects the judgment will be affirmed.

Affirmed in part, reversed in part and remanded with directions.

SOPER, Circuit Judge (concurring).

There is merit in the contention of the carrier that, the carriage of agricultural commodities having been exempted from the statute, the present case is not governed by the provisions of the statute but by the law of contracts. It is illogical and inconsistent to hold that dressed poultry is an agricultural commodity within the meaning of sec. 203(b) (6) of the Act, as was held by the Supreme Court in East Texas Motor Freight Lines, Inc., v. Frozen Foods Exp., 351 U.S. 49, 76 S.Ct. 574, and at the same time to hold that the carrier is bound by virtue of the Act to observe tariffs applicable to exempt goods which it had filed by mistake. None of the cited cases support this proposition. It was held in Beaumont-Sour Lakes & Weston Ry. Co. v. Magnolia Provision Co., 5 Cir., 26 F.2d 72, that if a carrier files by mistake too low a tariff for the carriage of goods it must, nevertheless, abide by it, but the goods in that case were not exempt from the statute.

It does not follow, however, that the decision of the District Court was wrong. The carrier's offer to transport the goods at the published rate was accepted by the shipper and a valid contract, whose terms were set forth in the bill of lading, was thereby formed. It is true that the amount sued for was below the jurisdictional minimum but a substantial federal question was involved and the Court having thereby acquired jurisdiction had power to decide the case on its merits.