CENTRAL POWER AND LIGHT
CO., Petitioner,

v.

UNITED STATES of America and
Interstate Commerce Commission,
Respondents.

STATE OF TEXAS, Petitioner,

v.

UNITED STATES of America and
Interstate Commerce Commission,
Respondents.

Nos. 80–1068, 80–1172.

United States Court of Appeals,
Fifth Circuit.

Feb. 26, 1981.

William L. Slover, Washington, D. C., Cicero C. Sessions, New Orleans, La., for petitioner in No. 80–1068.

Benjamin R. Civiletti, Atty. Gen., U. S. Dept. of Justice, Washington, D. C., Mark Evans, I.C.C., Gen. Counsel, Washington, D. C. for respondents in both cases.

Robert Lewis Thompson, Dept. of Justice, James Laskey, John J. Powers, III, Joseph H. Dettmar, I.C.C., Office of the General Counsel, Washington, D. C., for U. S. A.

Samuel R. Freeman, Denver, Colo., for Denver and Rio Grande Western Railroad Co.

Milton E. Nelson, Jr., and Harry L. De-Lung, Jr., Chicago, Ill., for Atchison, Topeka and Santa Fe Ry. Co.

John MacDonald Smith, San Francisco, Cal., for Southern Pacific Transportation Co.

Paul M. Haygood, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., Howard J. Trienens and Richard J. Metzger, Chicago, Ill., R. Eden Martin and John Will Ongman, Washington, D. C., for Denver and Rio Grande Western Ry. Co., The Atchison, Topeka and Santa Fe Ry. Co. and Southern Pacific Transportation Co.

Robert N. Kharasch, Gallans, Kharasch, Calkins & Short, Olga Boikess, Washington, D. C., for Colowyo Coal Co.

Mark White, Atty. Gen., Austin, Tex., J. David Hughes, Stuart Fryer, Carl E. Glaze, Asst. Attys. Gen., Austin, Tex., for petitioner in No. 80–1172.

## ON PETITION FOR REHEARING

Before HILL, RUBIN and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Railroad respondents, Denver & Rio Grande Western Railroad Company, Atchison, Topeka & Santa Fe Railway Company, and Southern Pacific Transportation Company, petition for rehearing of our decision reported at 634 F.2d 137 (5th Cir. 1980).

The railroads' concern relates to the law we should have applied in reviewing the Interstate Commerce Commission's decision and the applicable law to be applied by the Commission on remand. During the pendency of this petition for review, the bulk of the Staggers Rail Act of 1980 became effective on October 1, 1980.[1] Section 202 of the Staggers Rail Act added a provision affecting the definition of market dominance, a significant issue in our decision.[2] On December 11, 1980, and in light of the Staggers Rail Act, the Commission served three decisions with respect to its regulations defining market dominance. *Ex parte No. 320 Rail Market Dominance and Related Considerations* (December 11, 1980) removed the then existing regulations concerning market dominance found at 49 C.F.R. Part 1109.1. *Ex parte No. 320, (Sub-No. 1), Rail Market Dominance and Related Considerations* (December 11, 1980) withdrew previously proposed changes to the existing regulations. *Ex parte No. 320, (Sub-No. 2), Market Dominance Determinations and Consideration of Product Competition* (December 11, 1980) gave notice of proposed regulations for determining market dominance in light of the Staggers Rail Act. This panel's opinion was issued on December 15, 1980. The Commission in-

1. Staggers Rail Act of 1980, Pub.L.No. 96–448, 94 Stat. 1895. Section 710 of the Staggers Rail Act of 1980 provides that all of that Act would take effect on October 1, 1980, with the exception of §§ 206, 218(b) and 701.

2. Section 202 reads, in pertinent part:
   (d)(2) In making a determination under this section, the Commission shall find that the rail carrier establishing the challenged rate does not have market dominance over the transportation to which the rate applies if such rail carrier proves that the rate charged results in a revenue-variable cost percentage for such transportation that is less than—
   (A) 160 percent during the period beginning on the effective date of the Staggers Rail Act of 1980 and ending September 30, 1981;
   (B) 165 percent during the period beginning October 1, 1981, and ending September 30, 1982;
   (C) 170 percent during the period beginning October 1, 1982, and ending September 30, 1983;
   (D) 175 percent or the cost recovery percentage, whichever is less, during the period beginning October 1, 1983, and ending September 30, 1984; and
   (E) the cost recovery percentage, during each 12–month period beginning on or after October 1, 1984.
   For purposes of subparagraphs (D) and (E) of this paragraph, the cost recovery percentage of 170 percent or more than a revenue-variable cost percentage of 180 percent.

   . . . .

   (4) A finding by the Commission that a rate charged by a rail carrier results in a revenue-variable cost percentage for the transportation to which the rate applies that is equal to or greater than the applicable percentage under paragraph (2) of this subsection does not establish a presumption that (A) such rail carrier has or does not have market dominance over such transportation, or (B) the proposed rate exceeds or does not exceed a reasonable maximum.
   Staggers Rail Act of 1980, § 202(d)(2) and (4).

forms this court that a petition challenging the immediate repeal of the existing market dominance regulations has been filed in the District of Columbia Circuit and that on January 21, 1981, a stay of that repeal was granted. *The Clorine Institute, Inc. v. ICC and United States*, No. 80–2588 (D.C.Cir.), filed December 31, 1980.

The railroads, in their petition for rehearing, make several arguments. First they argue broadly that the Commission's withdrawal of its regulations concerning the market dominance presumptions renders moot our previous opinion. This argument is without merit. The Commission's action withdrawing its regulations has been stayed, and the validity of its actions is the subject of pending litigation.

■ Second, assuming that the market dominance presumptions were properly withdrawn, the railroads argue that the proposed regulations, *Ex parte No. 320 (Sub-No. 2)*, require that we vacate our previous opinion and affirm the Commission's decision in favor of the railroads. Again we reject the railroads' argument. In light of the nonfinal nature of the proposed regulations, it would be improper for us to use them as the standard by which to judge the Commission's decision in favor of the railroads below. For us to apply the proposed regulations would disrupt the orderly procedure of administrative litigation. "[A] court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act." *NLRB v. Food Store Employees*, 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080 n. 10, 40 L.Ed.2d 612 (1974).[3] Moreover, our reading of the proposed regulations suggests to us that our remand instructions with respect to the market dominance presumptions would remain viable even if it is decided that the prior regulations were properly withdrawn and the proposed regulations are both effective and retroactively applicable to this case.[4]

■ The railroads' third argument raises a serious question, namely, whether § 202 of the Staggers Rail Act of 1980, modifying the definition of market dominance, should be applied by the Commission on remand. This section of the Staggers Rail Act establishes a threshold determined by the revenue/cost ratio associated with a rate, below which market dominance may not be found.[5] Any ratio exceeding that threshold does not create a presumption of market dominance. The threshold increases on October 1 of each year beginning with 1980 until 1984. The general rule concerning the effect of a change of law during the pendency of judicial review is that an appellate court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or

**3.** *Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) established a simple but fundamental rule of administrative law.

> That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

332 U.S. at 196, 67 S.Ct. at 1577. *Accord Amoco Production Co. v. NLRB*, 613 F.2d 107 (5th Cir. 1980).

**4.** Even if new regulations are effective at the time the Commission considers this case on remand, we expect the Commission to address the question of whether such regulations should be applied in whole or in part to the instant case, being guided by the usual standards of whether new regulations should be given retroactive effect.

**5.** We clearly cannot determine whether this threshold has been exceeded in light of our holding that the Commission included improper factors in calculating variable cost for the revenue/cost presumption and that the Commission failed to adequately explain its methodology in calculating variable cost.

there is statutory direction or legislative history to the contrary. *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Central Power & Light ("CP&L") argues persuasively that the structure of § 202 of the Staggers Rail Act,[6] with its staged increase in the threshold level, clearly indicates that this section is to apply only to those rates filed on or after October 1, 1980.[7] We acknowledge the apparent merit in CP&L's argument;[8] however, we decline at this time to hold for CP&L because the issue has not been adequately briefed. Because this case must be remanded for other reasons, judicial economy will be served if this issue is addressed in the first instance by the Commission on remand[9] rather than delaying this petition to permit further briefing of the issue.[10]

The railroads' fourth argument is that the proposed regulations, *Ex parte No. 320* (*Sub-No. 2*), contain the reasoned explanation we required in our prior decision of why geographic competition may be considered in determining market dominance and why the Commission is departing from its prior indication that geographic competition was not an appropriate factor. We decline to pass on the adequacy of the Commission's rationale as to why it now believes geographic competition is relevant in market dominance determinations because of the nonfinal nature of the proposed regulations.[11] The proposal with respect to geographic competition is very cursory and tentative and does not appear specifically addressed to the problem we perceived, *i. e.,* an unexplained change in the Commission's treatment of geographic competition. We deem it inappropriate to rely at this time on a clearly tentative proposal which is aimed primarily at seeking comments as to the

---

6. CP&L also argues that application of Section 202's threshold requirement to this petition would result in manifest injustice.

7. Compare (i) *Potomac Electric Power Co. v. United States*, 584 F.2d 1058 (D.C.Cir.1978), which held that the Commission on remand of a rail rate case was to redetermine its jurisdiction in light of the promulgation of the market dominance requirement by the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. No. 94–210, 90 Stat. 41, ("Reform Act") during the pendency of a petition for review with the appellate court; with (ii) *Burlington Northern v. United States*, 555 F.2d 637 (8th Cir. 1977), where the appellate court refused to apply the jurisdictional requirement of market dominance of the Reform Act which became effective during pendency of the petition for review. The Eighth Circuit there concluded that the Reform Act made clear that jurisdiction of the Commission under the Reform Act is to be determined at the time a proceeding attacking a rate is filed.

8. For example, during October 1, 1980, through September 30, 1981, the threshold ratio is 160%. From October 1, 1981, through September 30, 1982, the threshold ratio increases to 165%. CP&L argues convincingly that it would be anomalous for the Commission to have jurisdiction over a shipper's attack on a rate filed before September 30, 1981, and then for jurisdiction to be lost on a remand from a court occurring after September 30, 1981, when such remand was necessitated by the action of the Commission in rendering an inadequate opinion.

9. Counsel for the Commission states to this court, in cursory fashion, that the Commission on remand will apply the new revenue/cost provisions of the Staggers Rail Act and whatever new regulations might then exist. However, we decline to view this as the Commission's final interpretation of the Staggers Rail Act and whichever regulations it deems to be applicable. We expect the Commission to address these issues on remand. See *Investment Company Institute v. Camp*, 401 U.S. 617, 628, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971), where the Supreme Court held that an agency's counsel's rationalization and interpretation of a statute are hardly tantamount to an administrative interpretation.

10. Accordingly, we need not decide at this time whether the issue is one of pure law with respect to which we owe no deference to the Commission's views, *Coca Cola v. Atchison, Topeka & Santa Fe Railway Co.*, 608 F.2d 213 (5th Cir. 1979), whether it is a subject outside the Commission's expertise resulting in reduced deference, *ICC v. Service Trucking Co.*, 186 F.2d 400 (3d Cir. 1951), or whether the normal degree of deference is to be shown the Commission's reading of this section, *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).

11. Our decision on the geographic competition issue also found inadequacies with several factual findings by the Commission. These deficiencies are, of course, not cured by the proposed regulations.

**1108**

appropriateness of considering geographic competition in the market dominance determination, and is not directed to our remand instructions.

The railroads' final point in their petition for rehearing is that § 212 of the Staggers Rail Act, adding provisions defining rate discrimination, makes clear that CP&L failed to allege a cause of action with respect to rate discrimination. Because the Commission failed to address at all CP&L's claim, it would be inappropriate for us to address it in the first instance. *SEC v. Chenery Corp. supra.* Because a remand is necessary on other issues, judicial and administrative economy will be furthered by having the Commission first address the issue.

Accordingly, the petition for rehearing is GRANTED, and our previous opinion is reinstated, as herein supplemented.

GRANTED.