**CAVALIER POULTRY CORPORATION,**
a corporation of the Commonwealth
of Virginia, Plaintiff,

v.

**FAWLEY MOTOR LINES, Incorporated,**
a corporation of the Commonwealth of
Virginia, Broadway, Virginia, Defendant.

**Civ. A. No. 435.**

United States District Court
W. D. Virginia, at Harrisonburg.

Nov. 30, 1955.

584

Glenn W. Ruebush, Harrisonburg, Va., Robert J. Corber, Washington, D. C., for plaintiff.

W. W. Wharton, Harrisonburg, Va., Donald Cefaratti, Jr., Washington, D. C., for defendant.

PAUL, Chief Judge.

This cause came on to be heard on motion of the plaintiff, Cavalier Poultry Corporation, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and on motion of the defendant, Fawley Motor Lines, Inc., to dismiss the complaint for want of jurisdiction, and on motion of the plaintiff for allowance of interest, and the Court having considered the pleadings, affidavit, admissions and briefs of the parties, and the Court having heard the argument of counsel, and due deliberation having been had thereon, now makes the following:

## Findings of Fact

1. That plaintiff, Cavalier Poultry Corporation, and defendant, Fawley Motor Lines, Inc., are Virginia corporations and within the jurisdiction of this Court.

2. That defendant holds, owns and possesses a certificate of convenience and necessity, No. MC 111402, issued by the Interstate Commerce Commission which authorizes the defendant to engage in the interstate transportation of, *inter alia,* dressed poultry and poultry products as a common carrier by motor vehicle; and, that the certificate has not been revoked, altered or amended to exclude or modify the provision for the transportation of dressed poultry and poultry products.

3. That a stipulation of the parties on file shows that:

(a) At various times from May 22, 1953, to May 6, 1954, the defendant performed transportation services in interstate commerce for the plaintiff by carrying dressed poultry on defendant's bills of lading, from Harrisonburg, Virginia, to points and places in New Jersey, New York and Pennsylvania.

(b) Charges were assessed by defendant and paid by plaintiff for the aforesaid transportation which included charges for mechanical refrigeration service aggregating $1,699.96.

4. That admissions in the defendant's Answer to the Complaint show that:

(a) Defendant duly published and filed tariffs with the Interstate Commerce Commission which were applicable to the shipments in this action.

(b) The applicable tariffs provided for a charge for refrigeration service only when the shipper requested such service in writing at the time shipments were tendered for transportation and only when such service was specified by the shipper on the bill of lading for each shipment.

(c) Plaintiff did not request in writing refrigeration service for any of the shipments involved and refrigeration service was not at any time specified by plaintiff on the bill of lading for each of the shipments.

5.  That the form of bill of lading used for the shipments in this action expressly incorporated the filed tariffs of the defendant as part of the contract of carriage evidenced by the bills of lading.

6.  That the dates of payment for the refrigeration charges paid by plaintiff to defendant are as set forth in the "paid" stamps affixed to the carrier's invoices for each shipment.

## Conclusions of Law

1.  That this matter having arisen under the Interstate Commerce Act, this Court has jurisdiction of this action and the parties hereto.

2.  That defendant is a common carrier by motor vehicle within the meaning of the Interstate Commerce Act.

3.  That, as a common carrier by motor vehicle, the defendant is prohibited from making charges which are different from the charges specified in its tariffs on file with the Interstate Commerce Commission.

4.  That the exemption from the provisions of the Interstate Commerce Act provided for vehicles carrying agricultural commodities, 49 U.S.C.A. § 303(b) (6), is not to be construed as exempting the transportation of dressed poultry as carried on by the defendant.

5.  That by reason of having applied for and obtained a certificate of convenience and necessity for the transportation of dressed poultry, and having filed tariffs applicable to such transportation, the defendant has made its operations subject to the provisions of the Interstate Commerce Act and the regulations of the Interstate Commerce Commission, including the requirement to comply with and observe its published tariffs.

6.  That the charges for refrigeration service assessed by defendant and paid by plaintiff were contrary to and in violation of defendant's tariffs on file with the Interstate Commerce Commission and applicable to the shipments of dressed poultry involved in this action.

7.  That the contracts of carriage for the transportation furnished plaintiff consisted of the bills of lading which expressly incorporated the applicable tariffs therein and the charges for refrigeration service assessed by defendant and paid by plaintiff constituted a breach by defendant of the contracts of carriage for which plaintiff is entitled to recover the amount of the charges.

8.  That this Court has jurisdiction to enter final judgment for the amount of the refrigeration charges unlawfully assessed and costs as taxed.

## Discussion

It will be noted that there are two grounds upon which the Court feels required to deny the defendant's contention that the complaint should be dismissed for lack of jurisdiction.

The first relates to the claim of the defendant that dressed poultry is an agricultural commodity the transport of which is exempt from the provisions of the Act, 49 U.S.C.A. § 303(b) (6). The statute exempts "agricultural commodities (not including *manufactured products* thereof)." (Emphasis supplied.) The question is whether the exemption applies to dressed poultry.

It would seem logical that the intention of Congress was to favor agricultural producers by exempting from the provisions of the statute those occasions when they caused their produce in its natural

state to be transported to market by motor vehicles, probably at irregular intervals and over no established routes. But it is hardly conceivable that there was any intention to exempt the transportation of dressed poultry in the manner and to the extent in which such transportation is carried on by the defendant and other interstate motor carriers.

Rockingham County, Virginia, in which the defendant has its headquarters is a county of great agricultural wealth. Measured in terms of monetary return the production of poultry is the largest industry in the county with an annual value of twenty million dollars or more. To this is added the production of surrounding areas through which defendant operates.

The amount of this poultry which the producer himself causes to be transported to an out-of-state market is inappreciable. Practically all of it is sold to local processing plants where it is prepared for the consumer. This processing involves such a complete "dressing" of the fowl by the removal of all inedible parts that when it leaves the plant it is ready for cooking. Much of the poultry thus dressed is packaged and sold under registered trade names adopted by the various plants which market it. The transportation of this dressed poultry to the markets where it is consumed is in itself a large business and is carried on almost entirely by motor carriers. Not only the defendant but other carriers as well are regularly engaged in transporting this dressed poultry to the consuming markets of the large cities in the eastern part of the nation. This particular defendant transports dressed poultry from Virginia and West Virginia to various cities in the following states: Florida, Tennessee, North Carolina, Kentucky, Ohio, Delaware, New Jersey, Pennsylvania, New York, Maryland, District of Columbia. I am unable to agree that Congress ever intended to exempt from the provisions of the statute a

transportation business of this nature and of such volume.

A second reason for holding that the Court has jurisdiction and that the transportation here involved is subject to the provisions of the Act is that which has been set forth in conclusion of law No. 5. Simply stated it is this: That when any carrier, upon his voluntary application therefor, is granted a certificate of convenience and necessity authorizing him to transport named commodities over designated routes his operations in that respect are subject to all the provisions of the statute applicable to certificate holders.

Regardless of whether the questioned transportation is such as might have been exempt if engaged in by one who held no certificate, the defendant by applying for and obtaining the certificate placed the transportation authorized by that certificate under the provisions of the Act.

### The Matter of Interest

The plaintiff has moved for the allowance of interest on the various overcharges from the date of payment of the unlawful charges. The Court, believing this to be a matter within its discretion, has denied the allowance of interest. These overcharges, which cover a considerable number of separate shipments, occurred over a period of approximately a year. No reason appears as to why the plaintiff did not question the overcharges when the first of them appeared in May, 1953, and when the matter could have been settled. Instead, the itemized list of the shipments shows that the now disputed charges continued until in May, 1954, at which time, presumably, the plaintiff first concerned itself about them. Under the circumstances I think that interest should not be allowed on the separate overcharges. The judgment to be entered here will, of course, bear interest until paid.