STATE OF NORTH CAROLINA EX REL NORTH CAROLINA UTILITIES
COMMISSION v. MRS. RUBY Q. McKINNON AND R. F. HUNT, D/B/A
SAFETY TRANSIT COMPANY, ROCKY MOUNT, NORTH CAROLINA,
A PARTNERSHIP; AND MOORE BROTHERS TRANSPORTATION COM-
PANY, INC., A CORPORATION.

(Filed 3 February, 1961.)

1. **Utilities Commission § 2—**

   The Utilities Commission has jurisdiction upon complaint or *ex mero
   motu* to determine whether any motor carrier is operating in violation
   of statutory regulations, including whether or not a carrier exempt
   from its jurisdiction is actually operating within the exemptive pro-
   visions of the statute and, if not, to enter orders to enforce compliance.
   G.S. 62-121.47 (2), G.S. 62-121.48 (11).

2. **Same: Carriers § 1—**

   An intracity carrier, even though exempt from regulation by the
   Utilities Commission, is a common carrier. G.S. 62-121.46 (5) (15).

3. **Same—**

   An intracity carrier, holding a certificate of exemption from the
   Utilities Commission and a franchise from the city or town in which
   it operates, is exempt from control of the Commission except as to rates
   and controversies with respect to extensions and services. G.S. 62-121.47
   (1), G.S. 62-122.1.

4. **Carriers § 2: Utilities Commission § 2—**

   While an exempt intracity carrier may not contract generally with

respect to charter trips, G.S. 62-121.52 (9), it may contract for charter trips for transportation of persons beyond the limits of the territory in which it is authorized to operate provided requests for such services originate within its territory, and provided such charter trips come within the exemptive provisions of the Act. G.S. 62-121.47 (a) (f) (h).

**5. Utilities Commission § 3—**

The Utilities Commission should not reverse its interpretation of a statute, adhered to over a long period of years, unless it clearly appears that its original interpretation was in error. Whether the statute should be amended is a legislative and not a judicial question.

**6. Carriers § 2: Utilities Commission § 2—**

A county or city board of education has the right to contract with an exempt intracity carrier for transportation of athletic teams or school bands to and from scheduled events, and such charter trips are exempt from supervision of the Utilities Commission. G.S. 62-121.47 (1) (a), G.S. 115-35 (4).

**7. Same—**

An exempt intracity carrier may use the same bus for charter trips to or from religious services, and charter transportation of *bona fide* employees of an industrial plant to and from places of their regular employment, and may also use for such charter trips a bus ordinarily used in its regular business of intracity transportation of passengers G.S. 62-121.47 (3). The use of "and/or" disapproved.

**8. Appeal and Error § 1—**

The Supreme Court will not ordinarily pass upon a question not presented by the record.

**9. Courts § 3: Utilities Commission § 2—**

Any carrier whose operations are adversely affected by operations of another carrier in violation of law may institute an action in the Superior Court against such carrier. G.S. 62-121.72 (2).

APPEAL by respondents from *Burgwyn, Emergency Judge,* December Civil Term, 1959, of NASH.

This proceeding originated before the North Carolina Utilities Commission on 31 January 1956 as the result of a petition and complaint filed with the North Carolina Utilities Commission by Atlantic Greyhound Corporation, Carolina Coach Company, Queen City Coach Company, Seashore Transportation Company, Smoky Mountain Stages, and Southern Coach Company, against Mrs. Ruby Q. McKinnon and Dr. R. F. Hunt, doing business as Safety Transit Company, hereinafter referred to as Safety. All the petitioners and complainants were common carriers of passengers by motor vehicle, operating over their respective franchise routes within the State of North Carolina, under certificates of public convenience and necessity

issued by the North Carolina Utilities Commission, hereinafter re-
ferred to as Commission, pursuant to the terms of the Bus Act of
1949 (General Statutes, Chapter 62, Article 6C).

Carolina Coach Company and Seashore Transportation Company
serve the City of Rocky Mount and vicinity. The other petitioners
and complainants are, like Carolina Coach Company and Seashore
Transportation Company, authorized to originate charter trips at
points along their respective franchise routes and by reason thereof
are interested in the subject matter of the controversy.

Safety is engaged in intracity or urban bus service under a fran-
chise issued by the City of Rocky Mount and pursuant to a certificate
of exemption granted by the Commission. In addition, Safety operates
within residential and commercial zones adjacent to and a part of
the City of Rocky Mount, which said zones have been established
by the Commission. Safety does not hold any certificate of public
convenience and necessity or contract carrier permit granted by the
Commission. On two occasions since the enactment of the Bus Act
of 1949, Safety has petitioned the Commission to grant it a certificate
of public convenience and necessity as a common carrier. Both of
these petitions were denied, but in lieu thereof the Commission ex-
tended the commercial and residential zones in which Safety could
operate under its franchise granted by the City of Rocky Mount.

It is alleged in the petition and complaint that Safety is actively
soliciting and handling charter parties originating in Rocky Mount
and vicinity without any legal authority to do so and in violation
of the Bus Act of 1949 and Rules and Regulations of the Commission
promulgated thereunder, particularly G.S. 62-121.46 (1); 62-121.47
(1); 62-121.52 (9), and Rules 27 and 28. The Commission was re-
quested to order Safety "and any other exempted intracity carriers
or municipal operators," to cease and desist from the handling of
charter trips; to conduct an investigation under G.S. 62-121.47 (2)
to determine whether Safety "or any other exempted intracity carriers
or municipal operators," purporting to operate under the provisions
of the Bus Act exempting them from regulation (G.S. 62-121.47),
are in fact so operating, and to enter such orders as may be necessary
to enforce compliance with such provisions; and to enter an appropri-
ate order defining the authority of exempted intracity carriers or
municipal operators.

Safety answered, denying that its activities were conducted in
violation of the Bus Act of 1949. Safety incorporated in its answer
the contents of a letter written on 8 September 1955 to its attorney
by E. A. Hughes, Jr., Director of Motor Passenger Transportation

for the Commission, which letter was authorized by the Commission and in pertinent part reads as follows: "G.S. 62-121.47 — Pursuant to your verbal request the Attorney General was asked for a ruling on certain portions of the above section of the Bus Act of 1949. To be more specific, he was asked whether or not a carrier such as your client, Safety Transit Company, who operates under (h) of Paragraph 1 of said section could also engage in the types of transportation permitted under (a) and (f) of said paragraph. I quote from the ruling of the Attorney General: ' * * * It is my opinion that a carrier operating under (h) of this paragraph may also engage in the types of transportation permitted under (a) and (f) of said paragraph. It is also my opinion that such exempted carrier is not required to file rates covering the transportation in which he may engage under (a) and (f).'

"Under this ruling it appears clear that Safety Transit Company may transport students of the public school system of North Carolina while said students are under control of the school, a teacher, athletic director or other agent of the school without any additional authority from this Commission. It further appears that there are no territorial restrictions for such operations and that the same would apply to the transportation of persons to and from religious services."

Safety likewise incorporated in its answer a ruling interpreting the Bus Act of 1949, and sent to all contract carriers of passengers over the signature of Fred C. Hunter, Commissioner, on 1 September 1949, which in pertinent part is as follows: "Attention is also directed to Section 5 of the Bus Act. This section describes the various transportation services in which a carrier may engage without making an application therefor, and without any authority therefor insofar as the Utilities Commission is concerned. The services described in this section are exempt from the Bus Act. That means that a carrier may engage in any one, or more, or all of these services if and when he pleases, so long as he limits his operations to the particular services set out in said Section 5." Section 5 is now codified as G.S. 62-121.47.

Safety admitted that as a result of the above letter dated 8 September 1955, and the ruling by the Commission on 1 September 1949, it did transport "students of the public school system of North Carolina while said students were under the control of the school teachers, athletic director, or other agent of the school, and trips for religious groups to and from religious services * * *." It denied that it actively engaged in the solicitation of charter trips except those mentioned above.

On 15 February 1956 the Commission issued its order of investi-

gation, which was legally served upon Safety and other carriers listed in Exhibit B, consisting of 29 carriers, including the respondent Moore Brothers Transportation Company, Inc. of High Point, North Carolina.

The general investigation into the proper construction of G.S. 62-121.47, docketed as "No. EB-1," and the petition and complaint against Safety, docketed as "No. B-115, SUB 4," were consolidated for hearing and on 20 March 1956 were heard together before the Commission.

Upon the evidence appearing in the record, including the pleadings introduced in evidence, as well as the exhibits and documents made a part of the record, the Commission found the facts as set out in the record, drew its conclusions of law and entered an order which in pertinent part is as follows:

"(a) * * * (The Commission held it had jurisdiction in this proceeding and the right to enter appropriate orders therein.)

"(b) That under the provisions of subsection (9) of G.S. 62-121.52 sole and exclusive right to operate to any place in this State pursuant to charter party or parties or charter trips, as defined in subsection (3) of G.S. 62-121.46, is vested in common carriers by motor vehicle transporting passengers under a certificate issued by the Commission, which said charter party or parties or trips must originate on each such carrier's routes and according to the rules and regulations adopted pursuant to the Bus Act of 1949; that the only exception to the charter party rights of common carriers of passengers by motor vehicle are the charter party rights now existing in favor of certain carriers which exist and have been acquired under the so-called 'grandfather' clause of the Bus Act of 1949, as set forth in the case of *Utilities Commission v. Fleming,* 235 N.C. 660.

"(c) That exempted carriers operating under the provisions of G.S. 62-121.47 are not authorized by law to operate to any place in this State pursuant to charter party or parties or trips except that a carrier operating under the provisions of G.S. 62-121.47 (h), which is engaged in the transportation of passengers when the movement is within a town or municipality exclusively, or within contiguous towns or municipalities and within a residential and commercial zone adjacent to and a part of such town or municipality or contiguous towns or municipalities as such zones are fixed and limited by the Commission, is authorized to operate to any place within its authorized municipality or the residential and commercial zones adjacent thereto, pursuant to charter party or parties, provided such charter

party or parties originate within such municipality or zones and are operated to a place or places within such municipality or zones.

"(d) That the transportation of pupils enrolled in public schools operated, conducted and administered by any county or city administrative unit and the transportation of all persons employed in the operation of such schools is regulated and limited by the provisions of Article 22 of Chapter 115 of the General Statutes, Cumulative Supplement of 1955 (Chapter 1372 of the Session Laws of 1955), and the use and operation of school buses is specifically controlled and limited by G.S. 115-183, Cumulative Supplement of 1955; that the various county boards of education and city administrative units are authorized to contract for transportation of persons and pupils as set forth in G.S. 115-190, Cumulative Supplement of 1955, but insofar as exempted carriers are concerned county boards of education and city administrative units are not authorized and empowered as governmental functions to secure and engage in the usual type of school charter services, including the transportation of athletic teams, bands, educational tours and pupils to and from athletic events; that principals of schools in the public school system, teachers, band directors and athletic directors are not authorized as governmental functions to engage in and secure the services of exempted carriers operating under the provisions of G.S. 62-121.47 for the purpose of transporting athletic teams, bands, educational tours and pupils to and from athletic events, and county boards of education and city administrative units are not authorized by law to confer authority upon such principals, teachers, band directors and athletic directors to secure the services of exempted carriers for such purposes; that intracity carriers, such as Safety and carriers of like kind and type, may engage in charter party or parties or trips within the limits set forth above in paragraph (c).

"(e) That the only government transportation that exempted carriers may engage in under the provisions of G.S. 62-121.47 (1) (a) is the transportation of passengers for and under the control of the governments or governmental units therein set forth and when governments or governmental units or subdivisions have been authorized to contract for the type of transportation requested and sought by such governments, units or subdivisions thereof.

"(f) That all carriers using buses or motor vehicles for the transportation of passengers to or from religious services shall use such buses or motor vehicles solely for such type of transportation and said buses or motor vehicles shall not be used for any other purposes or for any other type of transportation other than the transportation

of passengers to or from religious services; that no carrier is author-ized to use or shall use any bus, buses or motor vehicles for both types of transportation, that is, the use of vehicles for the transpor-tation of passengers to or from religious services and also the use of the same vehicles for the transportation of bona fide employees of an industrial plant to and from their regular employment.

"(g) That the transportation of passengers to or from religious services shall be confined to religious services or 'divine services' as explained and defined in this Order and the General Conclusions thereof, and no exempted carrier is authorized under the provisions of G.S. 62-121.47 (3) to transport passengers by motor vehicle to church picnics, church recreational meetings or other outings to lakes and beaches sponsored by churches or Sunday schools, nor is such exempted carrier authorized to transport members of churches or Sunday schools to collateral or auxiliary meetings sponsored by churches or Sunday schools but which do not fall within the meaning or definition of religious services or 'divine services' as defined in the General Conclusions of this Order.

"(h) That on and after the effective date of this Order, Safety and all intracity carriers similarly situated shall cease and desist from operating to any place in this State pursuant to charter party or parties or trips and shall cease from transporting passengers by motor vehicle according to such charter party or parties in accordance with the terms and mandate of this Order, except such charter party or parties as are permitted under Paragraph (c) of this Order.

"(i) That on and after the effective date of this Order all exempted carriers operating under the provisions of G.S. 62-121.47 shall cease and desist from transporting passengers by motor vehicle pursuant to charter party or parties or trips as commanded and set forth in this Order, and all carriers shall cease and desist from transporting passen-gers to or from religious services except in motor vehicles devoted and used solely and exclusively for the transportation of passengers to and from such religious services, and such motor vehicle shall not be used for any other form of transportation or transportation purpose.

"(j) That copies of this Order shall be sent to or served upon the parties to this proceeding and their counsel by the Chief Clerk of the North Carolina Utilities Commission.

"Issued by Order of the Commission.

"This the 1st day of August, 1956."

The respondents herein appealed to the Superior Court. The matter was heard at the December Term 1959 of the Superior Court of

Nash County and it was stipulated by and between the parties through their counsel that the court might take the appeal under advisement and render judgment out of term and out of the county, and out of the district. All the exceptions of the appellants were overruled and the order of the Commission affirmed. The judgment was entered on the 21st day of July 1960. The respondents appeal to this Court, assigning error.

*Attorney General Bruton, Asst. Attorney General Burns for the Utilities Commission, appellee.*

*Arch T. Allen for Carolina Coach Company and Southern Coach Company, appellees.*

*D. L. Ward for Seashore Transportation Company, appellee.*

*James L. Newsom for Atlantic Greyhound Corporation, appellee.*

*Samuel Behrends, Jr., for Queen City Coach Company and Smoky Mountain Stages, appellees.*

*Martin & Whitley for Safety Transit Company and for Moore Brothers Transportation Company, Inc., appellants.*

DENNY, J. The appellants assign as error the court's refusal to sustain their exceptions to the Commission's conclusions of law to the effect that it had jurisdiction of the subject matter and parties in this proceeding and had the power to make the requested investigation and to enter appropriate orders therein.

In our opinion, the Commission has the jurisdiction, under G.S. 62-121.45, G.S. 62-121.47 (2), and G.S. 62-121.48 (11), to investigate upon complaint or upon its own initiative without complaint, to determine whether any motor carrier is operating in violation of the provisions of the Bus Act of 1949, as amended. Naturally, such jurisdiction would include an exempted carrier, to determine whether or not its actual operations are under the exemptive provisions of the statute and, if not, to enter orders to enforce compliance. G.S. 62-121.47 (2). This assignment of error is overruled.

The appealing respondents also assign as error the court's refusal to sustain their exception to the conclusion of law set forth in section (b) of the order hereinabove set out. The appellants contend that the Commission erred in its conclusion of law in that it overlooked or ignored the provisions of G.S. 62-121.47 with respect to the rights of exempted carriers. We think the position of the respondents is well taken. In our opinion, an exempted intracity carrier is a common carrier within the meaning of the Bus Act of 1949. As used in the Act, G.S. 62-121.46 (15), the word "person" denotes "a corpo-

ration, individual, copartnership, company, association, or any combination of individuals or organizations doing business as a unit, * * *;" and in G.S. 62-121.46 (5) the term "common carrier by motor vehicle" signifies "any person which holds itself out to the general public to engage in the transportation by motor vehicle in intrastate commerce of passengers for compensation over regular routes and between fixed termini." We know of no provision in the law or any rule or regulation issued by the Commission that would justify or sustain a ruling that an exempted carrier under G.S. 62-121.47 (1) (h) may not engage also in the other exempted activities set out in (a) and (f) of section 1 therein. Therefore, we hold that an intracity carrier, holding a certificate of exemption issued by the Commission and a franchise from the city or town in which it operates, is exempt from control of the Commission except as to rates and controversies with respect to extensions and services. G.S. 62-121.47 (1) and G.S. 62-122.1. *Winston-Salem v. Coach Lines,* 245 N.C. 179, 95 S.E. 2d 510; *Utilities Commission v. Greensboro,* 244 N.C. 247, 93 S.E. 2d 151. We concur in the view that an exempted intracity carrier under G.S. 62-121.47 (1) (h) cannot qualify under the provisions of G.S. 62-121.52 (9) with respect to the transportation of charter parties generally. Such exempted carrier must confine its transportation to the type of transportation service or services expressly exempted in G.S. 62-121.47.

The pertinent parts of G.S. 62-121.47 read as follows: "(1) Nothing in this article shall be construed to include persons and vehicles engaged in one or more of the following services if not engaged at the time or other times in the transportation of other passengers by motor vehicle for compensation: (a) Transportation of passengers for or under the control of the United States government, or the State of North Carolina, or any political subdivision thereof, or any board, department or commission of the State, or any institution owned and supported by the State; * * * (f) transportation by motor vehicles used exclusively for the transportation of passengers to or from religious services; (g) transportation of *bona fide* employees of an industrial plant to and from their regular employment; (h) transportation of passengers when the movement is within a town or municipality exclusively, or within contiguous towns or municipalities and within a residential and commercial zone adjacent to and a part of such town or municipality or contiguous towns or municipalities; provided, the Commission shall have power in its discretion, in any particular case, to fix the limits of any such zone. * * *

"(3) None of the provisions of this section nor any of the other provisions of this article shall apply to motor vehicles used solely

for the transportation of passengers to and from religious services and/or the transportation of *bona fide* employees of an industrial plant to and from places of their regular employment."

The appellants also assign as error the failure of the court below to sustain their exception to the conclusion of law set out in paragraph (c) of the order hereinabove set out, in that the conclusion and order prohibit intracity carriers, operating under G.S. 62-121.47 (h), from transporting charter parties to any part of the State outside the town or municipality, including the residential and commercial zones adjacent thereto as fixed by the Commission. The Commission held that such carrier is authorized to transport charter parties from one part of its operating area to another within the municipality or the adjacent zones which have been fixed by the Commission, but not beyond those limits.

In our opinion, there is nothing in the Bus Act of 1949 or in the rules and regulations of the Commission, to support such a conclusion. Certainly the Commission did not think intracity carriers were so limited territorily on 1 September 1949, the date on which it issued its statement with respect to section 5 of the Bus Act of 1949 (now codified as G.S. 62-121.47), the pertinent part of which ruling is set out hereinabove. It is well to note that Rule 27, which the petitioning complainants cite and allege these respondents are violating, was promulgated by the Commission on 4 August 1950, nearly five years before the letter written by the Director of Motor Passenger Transportation for the Commission, dated 8 September 1955, which letter, according to the Commission's findings in this proceeding, was written pursuant to the direction of the Commission to the attorney of the respondent Safety. That letter expressly informed Safety that a carrier operating under (h) of G.S. 62-121.47 might also engage in the types of transportation under (a) and (f) of said paragraph.

We know of nothing in the Bus Act of 1949, or in any amendment thereto or in the decisions of this Court relative thereto, that supports or warrants such a complete reversal of interpretation of the exemptive provisions of G.S. 62-121.47. The complete reversal of the interpretation of a statute which has been adhered to over a long period of years by the Commission, should not be made unless it clearly appears its original interpretation was in error; and in our opinion the original interpretation given to the statute under consideration was correct. If the statute should be amended in this respect it should be done by the Legislature and not by judicial interpretation.

Therefore, we hold that an exempted intracity carrier, under G.S.

62-121.47 (h), has no territorial limitations as to the transportation of passengers under subsections (a) and (f) of said statute, where the request for such services arises within the area for which such carrier holds a certificate of exemption from the Commission and a franchise from the municipality in which it operates or within any additional zone or zones adjacent thereto which have been fixed by the Commission.

The appellants likewise assign as error the refusal of the court below to sustain their exception to that portion of the Commission's order set out hereinabove as paragraph (d) thereof. The evidence below is to to the effect that Safety admits that, in addition to engaging in the transportation of passengers under subsection (h) of G.S. 62-121.47, it has also engaged in the transportation of athletic teams and bands of school units, which teams and bands were under the control of a political subdivision of the State, and that it has also transported parties to and from religious services.

While it is true that Article 22 of Chapter 115, which governs the operation of school buses, makes no provision one way or the other for the transportation of athletic teams or school bands, it is equally true that school bands and athletic teams are under the control of the school authorities. Therefore, in our opinion, the board controlling such activities would have the inherent right to contract for such transportation as might be necessary to transport its athletic teams and its bands to and from such events as have been scheduled under the supervision of school authorities and that such transportation would be exempt under subsection (a) of G.S. 62-121.47 (1).

G.S. 115-35 (4) reads as follows: "Power to Regulate Extra Curricular Activities. — County and city boards of education shall make all rules and regulations necessary for the conducting of extra curricular activities in the schools under their supervision, including a program of athletics, where desired, without assuming liability therefor; provided, that all interscholastic athletic activities shall be conducted in accordance with rules and regulations prescribed by the State Board of Education."

In our opinion, the phrase "without assuming liability therefor" was inserted for the purpose of making it clear that such governing authorities were not waiving governmental immunity from torts, and does not restrict the power of such boards to contract for transportation or other required items necessary in connection with duly approved interscholastic activities. Furthermore, Article 22 of Chapter 115 (Chapter 1372 of the Session Laws of 1955) of the General Statutes, Cumulative Supplement of 1955, was ratified on 26 May

1955 and made effective from and after that date. Therefore, the provisions of Chapter 1372 of the Session Laws of 1955 were in effect on 8 September 1955, when the letter from the Director of Motor Passenger Transportation for the Commission was written to Safety's attorney, advising him that his client, Safety Transit Company, could engage in the identical services the Commission now says it cannot engage in. Moreover, in said letter it was expressly stated that there were no territorial restrictions on the exempted services under subsections (a) and (f) of G.S. 62-121.47 (1). Likewise, in the communication sent out by the Commission on 1 September 1949, it was stated that exempted carriers might engage in any or in all exempted activities under section 5 (G.S. 62-121.47) of the Act and no territorial limitation was imposed on exempted carriers. This communication also stated: "The services described in this section are exempt from the Bus Act."

The respondents further assign as error the failure of the court below to sustain their exceptions to paragraph (f) of the Commission's order set out hereinabove.

The facts involved in this proceeding raise no question whatever that calls for an interpretation of section (3) of G.S. 62-121.47. We would not comment thereon but for the fact that in our opinion this section has been erroneously construed by the Commission.

Section (3) of the above statute reads as follows: "None of the provisions of this section nor any of the other provisions of this article shall apply to motor vehicles used solely for the transportation of passengers to or from religious services and/or in the transportation of *bona fide* employees of an industrial plant to and from places of their regular employment."

The above portion of the statute does not state that all carriers using buses or motor vehicles for the transportation of passengers to or from religious services shall use such buses or motor vehicles solely and exclusively for such transportation, as stated by the Commission in paragraph (i) of its order.

In our opinion, the primary object in enacting section (3) of G.S. 62-121.47 was to make certain that where churches or Sunday schools or others owned a bus and used it solely for the transportation of passengers to or from religious services, such operation was to be completely free from supervision or regulation by the Commission. Likewise, it was intended that where a person, firm or corporation owned a bus and used it solely for the transportation of *bona fide* employees of an industrial plant to and from their regular employment, such transportation service was also intended to be wholly

free from supervision and regulation by the Commission. But the ruling below, to the effect that the same bus cannot be used to carry people to and from religious services and to transport *bona fide* employees of an industrial plant to and from their work, is not authorized by such section. Unfortunately, the Legislature tied the two types of services together by the use of that oft condemned and ambiguous term "and/or," which contains both the conjunctive "and" and the disjunctive "or." If the statute read: used solely for the transportation of passengers to and from religious services or in the transportation of *bona fide* employees of an industrial plant, etc., we would concur in the interpretation placed thereon by the Commission. But, since the statute is worded as it is, we hold that a bus may be used solely for the transportation of passengers to and from religious services and for the transportation of *bona fide* employees of an industrial plant to and from their regular employment; that is, the sole use may include both types of services. We again disapprove the use of the term "and/or" in statutes, warrants, and bills of indictment. *Gibson v. Insurance Co.,* 232 N.C. 712, 62 S.E. 2d 320; *S. v. McLamb,* 236 N.C. 287, 72 S.E. 2d 656; *S. v. Daughtry,* 236 N.C. 316, 72 S.E. 2d 658; *Johnson v. Bd. of Education,* 241 N.C. 56, 84 S.E. 2d 256; *Thomas & Howard Co. v. Insurance Co.,* 241 N.C. 109, 84 S.E. 2d 337; *Brady v. Beverage Co.,* 242 N.C. 32, 86 S.E. 2d 901.

The appellants likewise assign as error the failure of the court below to sustain their exceptions to paragraph (g) of the Commission's order set out hereinabove. The respondents contend that the definition given in the order as to the meaning of "religious services," is too restrictive and is contrary to the legislative intent. In view of the absence of any finding of fact to the effect that these appellants or either one of them is violating the provisions of subsection (f) of G.S. 62-121.47 (1), we reserve passing on this question until it is presented in a case upon findings of fact supported by competent evidence tending to support an alleged violation of such exempted service or services. In support of this view, we point out the testimony of E. A. Hughes, Jr., Director of Motor Passenger Transportation of the Commission, in the hearing below: "Q. Do you have any information now that any of the haulers are violating the provisions or manner of hauling as set forth in your letter of September 8, 1955? A. No, sir, I don't have any such information."

The respondents assign as error the failure of the court below to sustain their exception to the order of the Commission hereinabove set out in paragraph (i) thereof, in that the Commission ordered all intracity carriers operating under the provisions of G.S. 62-121.47,

from and after the effective date of the order, to cease and desist from transporting passengers by motor vehicle pursuant to charter party or parties or trips, as commanded and set forth in the order, and all carriers to cease and desist from transporting passengers to and from religious services, except motor vehicles devoted and used solely and exclusively for the transportation of passengers to and from such services, and that such motor vehicle was not to be used for any other form of transportation or transportation purpose.

We think the Commission clearly failed to make a distinction between the provisions contained in G.S. 62-121.47 (1) and subsection (f) thereof and the provisions contained in section (3) of said statute.

In our opinion, subsection (f) of the above statute, which reads, "transportation by motor vehicles used exclusively for the transportation of passengers to and from religious services," is susceptible to the interpretation that such vehicle at the time it is being used to transport passengers to and from religious services is limited to that service and is not permitted to pick up and discharge passengers for compensation in going to and from such services.

It appears to us that to require a carrier, who may use a bus costing anywhere from ten to twenty thousand dollars or more in the exempted service authorized in subsection (f) of the above statute, to sequester such bus from its fleet of buses and not use it for any other form of transportation or transportation purpose, is such an unrealistic and impractical requirement from an economic standpoint, it cannot be in conformity with legislative intent. It is certain that such restriction or limitation on the use of a carrier's equipment, cannot be justified by logic or common sense. *Interstate Commerce Commission v. Dunn* (C.C.A. 5th), 166 F 2d 116; *Interstate Commerce Commission v. Service Trucking Co.* (C.C.A. 3rd), 186 F 2d 400; *Atlantic Coast Line R.R. Co. v. Boyd* (Florida 1958), 102 So. 2d 709.

In *Interstate Commerce Commission v. Dunn, supra,* the defendant used the trucks in question for hauling for hire goods in intrastate commerce under a certificate issued him by the State of Georgia. He used these same trucks for hauling in interstate commerce loads of baled cotton. It was this latter activity against which the Interstate Commerce Commission sought an injunction unless the defendant secured a certificate of public convenience and necessity or other authority. The defendant claimed exemption from interstate commerce control under the provisions of the Federal Motor Carriers Act, 49 U.S.C.A., section 303 (b) (6), which reads as follows: " (b) Vehicles excepted from operation of law. — Nothing in this chapter, except the provisions of section 304 of this title relative to qualifi-

cations and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof), *if such motor vehicles are not used in carrying any other property, or passengers, for compensation."* (Italics added.)

The above section had been amended 29 June 1938 by deleting the world "exclusively" following "used" and adding the italicized portion. The District Court held the trucks exempted because "the vehicles used by the defendant in carrying baled cotton in interstate commerce are not at the same time used in carrying any other property for compensation." The Commission in its brief said: "We contend that it makes no difference whether the 'other property' is carried 'at the same time' or *at some other time,* or whether it is moving in intrastate or in interstate commerce." The Circuit Court said: "Its (Interstate Commerce Commission's) contention is that a single use at any time of a truck for the carriage of 'other property' for hire excludes the truck from the exemption, we suppose so long as its ownership is unchanged. This is so unreasonable and so crippling both to intrastate carriage for hire and to the free interstate carriage of the privileged commodities, and even contrary to the general policy of the legislation, that it cannot be the true legislative intent. * * * Dunn, in 1946, used his five trucks to make nineteen interstate hauls, less than four trips in a year for each truck. Are they all disqualified in 1947 from serving the privileged commodities in finding a market beyond the State under the exemption? Can they ever be purified from the taint of having hauled other property for hire? Did Congress intend to create any such taint? We do not think so."

The Circuit Court of Appeals, in 1951, in the case of *Interstate Commerce Commission v. Service Trucking Co., supra,* followed the *Dunn* case, *supra,* in the interpretation of the exemptive provisions of the same statute.

Likewise, in the case of *Atlantic Coast Line R.R. Co. v. Boyd, supra,* the State of Florida passed an Act exempting certain motor carriers from the control of the Florida Railroad and Public Utilities Commission while engaged exclusively in transporting exempted materials, among them a product known as dolomite. The legal question involved was identical to that before us, except it involved the transportation of goods and materials, while our statute involves the transportation of passengers to and from religious services. The Florida Court said: "It is our view that the transportation of dolomite, alone, of the pro-

ducts in question, is within the excluded jurisdiction and then only when the vehicles employed are used exclusively to take it from the place where it is mined to the consumer or grower. And in making this statement we do not purpose to adopt the restricted definition of the word 'exclusively' for which the petitioners contend. It would not, in our opinion, be fair or sensible to hold that a vehicle used to transport an occasional load of dolomite from the mine to the grower or consumer would have to remain idle when not actually put to such use. We concur in the interpretation of the Commission that when a vehicle at any given time is employed in carrying dolomite on such a trip the load must consist entirely of dolomite or dolomite and other exempt materials."

In G.S. 62-121.44, the Legislature, in its declaration of policy, among other things, said: " * * * to foster a coordinated State-wide motor carrier service; to conform with the national transportation policy and the Federal Motor Carrier Act insofar as the same may be found practical and adequate for application to intrastate commerce; * * *."

We hold that the restrictions sought to be put on the use of equipment pursuant to the provisions of subsection (f) of G.S. 62-121.47 (1), are without warrant of law. Therefore, the cease and desist orders with respect thereto, contained in the order of the Commission, were erroneously entered.

It might be well to note that when an exempted carrier is operating in violation of the exemptive provisions of G.S. 62-121.47, any other carrier adversely affected thereby may institute an action in the Superior Court against such exempted carrier, pursuant to the provisions of section (4) of the above statute and G.S. 62-121.72 (2), as was done in *Bryant v. Barber*, 237 N.C. 480, 75 S.E. 2d 410.

We have sought to discuss and consider only the pertinent questions raised by the record which we deem essential to the proper disposition of this case. We do not think the evidence or the findings of fact with respect thereto, support any conclusion of law to the effect that these respondents are operating in violation of the exemptive provisions of G.S. 62-121.47.

Therefore, the order of the Commission is hereby set aside and this cause remanded to the end that an order may be entered in accord with this opinion.

Error and remanded.